UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Respondent,<br><br>    v.<br><br>URIEL MIRANDA-OREGEL,<br><br>    Movant. | No.  2:10-cr-0007 JAM KJN P<br><br>FINDINGS AND RECOMMENDATIONS |

I.  INTRODUCTION

    Movant is a federal prisoner proceeding without counsel with a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Movant claims defense counsel was ineffective because counsel allegedly did not explain the consequences of (a) failing to earlier seek a reduction in offense level for acceptance of responsibility, and (b) rejecting the government's 37-month plea offer made pursuant to the U.S. Department of Justice's Fast-Track Immigration Prosecution Program ("Fast-Track Program.")  (ECF No. 89 at 5-6.)  Respondent contends that the record reflects that movant made the informed choice not to follow counsel's advice.  In his reply, movant contends that his communication with defense counsel and the interpreter was impacted by "a very real language barrier."  (ECF No. 108.)  As set forth below, the court recommends that the § 2255 motion be denied.

////

1

## II. LEGAL STANDARDS

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed the sentence. Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir. 1988). Under § 2255, a court may grant relief to a federal prisoner who challenges the imposition or length of his or her incarceration on the ground that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A movant must allege specific facts that, if true, entitle the movant to relief. See United States v. Howard, 381 F.3d 873, 877 (9th Cir. 2004); United States v. Rodrigues, 347 F.3d 818, 824 (9th Cir. 2003) (citation omitted). A judge may dismiss a § 2255 motion if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), Section 2255 Rules.

Where a claim involves alleged occurrences outside the record, an evidentiary hearing is not required if the allegations "viewed against the record, either fail to state a claim for relief or are 'so palpably incredible or patently frivolous as to warrant summary dismissal.'" Marrow v. United States, 772 F.2d 525, 526 (9th Cir. 1985) (quoting United States v. Schaflander, 743 F.2d 714, 717 (9th Cir. 1984)). A hearing may be required "in spite of 'the barrier of the plea or sentencing procedure record [which], although imposing, is not invariably insurmountable.'" Shah v. United States, 878 F.2d 1156, 1158 (9th Cir. 1989), quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977). Where a movant's allegations contradict statements made in court, credibility must be assessed. Shah, 878 F.2d at 1159. However, an evidentiary hearing is not required where the issue of credibility may be "conclusively decided on the basis of documentary testimony and evidence in the record." Watts v. United States, 841 F.2d 275, 277 (9th Cir. 1988). Also, the court may expand the record with other documentary evidence. United States v. Espinoza, 866 F.2d 1067, 1070 (9th Cir. 1988) (citing Rule 7 of the Rules Governing Section

////

2255 Proceedings); accord Shah, 878 F.2d at 1159 (noting that judges may use their own notes and recollections, as well as common sense, to supplement the record).

### Alleged Ineffective Assistance of Counsel

The clearly established federal law for ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984).  To succeed on a Strickland claim, movant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." Id. at 687.  Counsel is constitutionally deficient if the representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." Id. at 687-88 (internal quotation marks omitted).  "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington v. Richter, 131 S. Ct. 770, 787-88 (2011) (quoting Strickland, 466 U.S. at 687).

The United States Supreme Court has confirmed that the Sixth Amendment right to counsel "extends to the plea-bargaining process." Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012).  To prevail on such a claim, movant must demonstrate "'gross error on the part of counsel.'" Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002) (quoting McMann v. Richardson, 397 U.S. 759, 772 (1970)).  "The Third Circuit has interpreted this standard as requiring [movant] to demonstrate that 'the advice . . . he received was so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the [plea] offer.'" Id. (quoting United States v. Day, 969 F.2d 39, 43 (3rd Cir. 1992)).

To establish prejudice where a movant claims defective advice of counsel caused him to reject a plea offer and proceed to trial, the movant must demonstrate that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the movant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler, 132 S. Ct. at 1385.

III.     THE RECORD

On January 19, 2010, movant was arraigned, assisted by certified interpreter Yolanda Riley-Portal. (ECF No. 7.) Six status conferences were continued to allow movant's first defense counsel, an assistant federal defender, "to review the Advisory Guideline Presentence Investigation Report, and a proposed plea agreement, with Mr. Miranda." (ECF Nos. 8-11; 13, 14.) On July 13, 2010, movant's assistant federal defender informed the district court that:

> based upon my discussions with Mr. Miranda, it's my opinion that the communication line has broken down between me and him. He does not trust my judgment and guidance in this case and my legal opinions. We're having a very difficult time working together. It's his request, and you could ask him later, he's prepared to speak on this issue if you wish, it's his request for reappointment of counsel.

(ECF No. 77 at 3.) Following an *in camera* hearing, the matter was continued for identification of new counsel for movant. (Id.)

On July 20, 2010, new defense counsel was appointed to represent movant (hereafter "defense counsel"). (ECF No. 18.) Additional continuances were granted to allow the parties to negotiate a resolution. (ECF Nos. 25, 27.) On August 3, 2010, movant's newly-appointed defense counsel appeared on behalf of movant at a status conference, and stated, "My hope is that we can discuss the plea agreement that I'm going to be provided and hopefully get the case taken care of on that date." (ECF No. 77 at 3.) On October 26, 2010, defense counsel was granted a continuance to prepare and confer with his client. (ECF No. 29.)

On November 8, 2010, the government noted that negotiations had broken down, and asked that the matter be set for trial scheduling. (ECF No. 79 at 3-4.) On December 14, 2010, movant appeared in open court with defense counsel. (ECF No. 81.) Movant was assisted by sworn Spanish interpreter, Christina Scherer. (ECF No. 81 at 3.) The court asked defense counsel if he wanted to set the matter for trial, and defense counsel responded, "Yes, your Honor. That's my understanding in speaking with my client." (Id.) Trial was set for February 28, 2011. (ECF No. 81 at 4.)

////

4

On the first day of trial, the record reflects that movant was assisted by two court interpreters, Glenna White and Frank Barcelo, who are federally certified in Spanish. (ECF No. 84 at 5.) The district court ruled on motions in limine, which included granting the government's motions to introduce evidence of movant's prior deportations from the United States (ECF No. 84 at 7-9), and to preclude all arguments and evidence relating to a jury nullification defense (ECF No. 84 at 9-10).

Stephen Miller, an immigration enforcement agent with the U.S. Immigration and Customs Enforcement, testified that he and movant "engaged in small talk throughout the day;" that movant "had a sociable demeanor. He spoke a decent amount of English, and we were able to communicate fairly well." (ECF No. 84 at 33.) Mr. Miller testified that he only speaks a little Spanish, so he and movant "met in the middle" and movant "spoke a fairly decent amount of English. So I believe we communicated in English more than Spanish." (ECF No. 84 at 33-34.) On cross-examination, Mr. Miller clarified that he may have spoken with movant for around a half an hour, 45 minutes combined, during the eight hour period. (ECF No. 84 at 39.) Mr. Miller is the agent who picked movant up from the jail and transported him to be processed by ICE. (ECF No. 84 at 40.) Mr. Miller confirmed that he asked movant in Spanish whether movant had any questions. (ECF No. 84 at 43.) Movant did not have any questions. (ECF No. 84 at 43.)

On March 1, 2011, the second day of jury trial, with the assistance of certified Spanish interpreter Glenna White, movant indicated he was prepared to enter a guilty plea. (ECF No. 85 at 4.) The district court conducted a change of plea proceeding, placed movant on the stand and movant was sworn in under oath. (ECF No. 85 at 4.) The court asked movant if he wanted to not go forward with the trial and change his plea of not guilty to guilty, and movant responded, "Yes." (ECF No. 85 at 4.) The court then engaged in the following colloquy, in pertinent part:

> THE COURT: All right. I'm going to have to ask you a number of questions to make sure that this is a valid plea. Your answers to my questions will be subject to the penalties of perjury. So make sure that you answer each question honestly. Do you understand that?
>
> THE [MOVANT]: Yes.

| | |
|---|---|
| 1 | THE COURT: If you don't understand any of the questions that I ask you, let me know, and I'll rephrase them to make sure you do understand them. And if at any time you want to speak with your lawyer, let me know that, and I will allow you to do so. |
| 2 | |
| 3 | |
| 4 | Do you understand what I've just said? |
| 5 | THE [MOVANT]: Yes. |
| 6 | . . . . |
| 7 | THE COURT: Mr. Miranda, are you fully satisfied with the representation and advice given to you in this case by your attorney? |
| 8 | |
| 9 | THE [MOVANT]: Yes. |
| 10 | THE COURT: And are you changing your plea of not guilty to guilty because you are, in fact, guilty? |
| 11 | THE [MOVANT]: Yes, I am guilty. |
| 12 | THE COURT: And are you doing this, are you entering your plea of guilty voluntarily? Is anyone forcing you to do this? |
| 13 | |
| 14 | THE [MOVANT]: No. |
| 15 | THE COURT: Okay. Has anyone made any promises to you or assurances to you of any kind to get you to enter a plea of guilty in this case? |
| 16 | |
| 17 | THE [MOVANT]: No. |
| 18 | THE COURT: Do you understand that your plea of guilty in this case could result in your being deported, denied naturalization, and/or admission to the United States? |
| 19 | |
| 20 | THE [MOVANT]: Yes. |

(ECF No. 85 at 4-6.) Movant was advised that the maximum possible penalty if he entered a guilty plea to the charge of being a deported alien found in the United States was 20 years in prison, a $250,000 fine, a special assessment of $100, and a period of supervised release of up to three years. (ECF No. 85 at 7-8.) Movant was informed that the district judge would consider sentencing guidelines and statutory sentencing factors and the presentence report prepared by probation, but that the judge has authority "in some circumstances to impose a sentence that is more severe than what's called for by those guidelines or less severe than what's called for by those guidelines," and movant indicated that he understood that fact. (ECF No. 85 at 8-9.) The

6

1   district court accepted movant's guilty plea, and excused the jury.  (ECF No. 85 at 13.)

2   On March 1, 2011, the case was referred to Probation for preparation of the presentence

3   report ("PSR").  The PSR confirmed that movant has been deported on seven prior occasions.[1]

4   (PSR ¶ 13.)  Movant's prior criminal convictions included a 1998 conviction for possession of a

5   controlled substance for sale, resulting in a three year prison term; driving without a license

6   conviction on November 5, 2001, resulting in one day in jail, and 18 months' probation; and a

7   2004 conviction for receiving stolen property, resulting in three years' probation, six months in

8   jail.  (PSR ¶¶ 17-19.)  On September 22, 2004, movant's probation was revoked, resulting in 16

9   months in prison. (PSR ¶19.)  On September 15, 2006, movant's parole was revoked, resulting in

10  his return to custody; movant was discharged from parole on October 3, 2008.  (PSR ¶19.)

11  On June 14, 2011, movant appeared for judgment and sentencing.  (ECF No. 83.)

12  Defense counsel confirmed that he had an opportunity to review the presentence report with

13  movant.  (ECF No. 83 at 5.)  The district court found that the advisory offense level was 24, and

14  the advisory Criminal History Category was IV.  (ECF No. 83 at 6.)  The district court did "not

15  agree that there was an acceptance of responsibility or any contrition by the [movant] in this

16  case," and found that movant's change of heart in the middle of trial did not warrant a two-level

17  reduction for acceptance of responsibility.  (ECF No. 83 at 6.)  Based on the presentence report,

18  as well as the sentencing briefs, the court did not "see any act or profession of contrition . . . to

19  warrant a two-level downward reduction," and found the advisory guideline range to be 77 to 96

20  months.  (ECF No. 83 at 7.)  Defense counsel argued, *inter alia*, for the court to deviate from the

21  recommended 77 month sentence, to apply the two level departure for movant's acceptance of

22  responsibility, and to sentence movant to the 37 months offered through the Fast-Track offer.

23  The district court then heard from movant:

24  > THE [MOVANT]:  Well, the thing that I wanted to say is that I
25  > never wanted to get to this limit, to where we are right now.  It's
26  > just that I always wanted to take the time, except that I did not feel -
    > - we didn't get along very well.  And so now here we are, and I

---

[1] In its sentencing memorandum, the government noted that movant was deported on May 17, 1999, March 5, 2002, February 2, 2005, August 17, 2005, October 17, 2006, and November 3, 2006.  (ECF No. 59 at 3, n.1.)  On April 25, 2007, movant was again deported.  (PSR ¶3.)

7

> always, always was willing to take the 37 months, and now I am involved in these problems that I didn't know about. That now I'm getting more than double of what I was told.
>
> The only thing I wanted to do was to come and explain that this time I wasn't arrested committing any crime. I did not know what a jury was or a trial. I was trying to explain to him that I wanted to explain things to you. That I thought the 37 months were a little bit too much for the case that I had because I wasn't arrested committing any crimes. And now it turns out that I'm getting more than 77, 78 months. I just don't understand why.

(ECF No. 83 at 9-10.)

After hearing from the prosecution, the district court used the advisory guidelines and considered the statutory sentencing factors, and then addressed movant:

> THE COURT: Mr. Miranda, what you don't get and what I see throughout the presentence report is the fact that you don't get the fact that it's against the law to come into this country without permission of either Immigration or Homeland Security. As the government's brief indicates, your record shows that you have absolutely no respect for the laws of the United States. That's the part you don't get. One or two times, I see often. And that's why we have a Fast Track program where defendants who come into the United States illegally are sentenced to lower sentences. You've done this seven times. Not once, not twice, but seven times. And when you've come into the United States, instead of being a productive member of society, you come in and you break the law.
>
> You have a criminal record which leaves you with a criminal history category that's fairly high for these types of cases. That's why you're looking at 77 months instead of 37 months or something less. It's because you just decide I'm going to do whatever I want []regardless of what the laws of the United States say or provide. That's the reason. You don't seem like a person -- and I'm concerned. You're only 30 years old. You don't seem like a person who takes any law seriously. You'll take your chances, you'll take your risks, and you'll live your life the way you want regardless of what the laws say or provide.
>
> You're going to serve time. You'll then be deported again. If you come across the border again without permission of immigration, you're going to look at 10 years in prison or maybe 15 years in prison. If you want to spend the rest of your life in prison, that's your choice. You're the person making the choice. No one forced you to come across.
>
> I, frankly, find, Mr. Jiminez, the brief -- and I know it's your client's position that he was, in effect, forced to come across the border this time around. I don't find that, honestly, given what I

8

> read in this presentence report to be very credible. I think Mr. Miranda is just a person who is going to continue to do what he wants until finally he realizes it's not worth it to spend his entire life in prison.

(ECF No. 83 at 8-12.) The court then sentenced movant to 77 months in prison, a $100 special assessment, and 36 months supervised release following release from prison. (ECF No. 83 at 12-13.) Judgment was entered on June 16, 2011. (ECF No. 65.) Movant filed two notices of appeal. (ECF Nos. 66, 69.) On May 21, 2012, the Ninth Circuit Court of Appeals affirmed movant's sentence. (ECF No. 87.) The Court of Appeals found that the "district court did not clearly err in finding that [movant] had not accepted responsibility for his offense, because the record reflects that he did not demonstrate contrition and that his conduct manifesting acceptance of responsibility was untimely." (ECF No. 87 at 2.) On November 16, 2012, the Court of Appeals issued its formal mandate. (ECF No. 88.).

Defense Counsel's Declaration

Movant's defense counsel provided a declaration in which he declares that he is fluent in Spanish, and met with movant on many occasions to explain to him -- in Spanish -- exactly what movant's situation was, to give counsel's opinion, and to discuss any questions. (ECF No. 103-1 at 2.) Counsel states that based on his conversations with movant, and review of discovery, counsel concluded that there was no viable defense in this case. (ECF No. 103-1 at 2.) Defense counsel declares that he expressed this opinion to movant on several occasions. (ECF No. 103-1 at 3.) Specifically, on August 6, 2010, counsel met with movant at the Butte County Jail, accompanied by a certified Spanish interpreter, Eliana Rey, during which meeting counsel "thoroughly reviewed the plea agreement and sentencing guidelines with [movant]," and advised movant that counsel "did not believe [movant] had a viable defense." (ECF No. 103-1 at 3.) Movant "stated he did not care and that he would fight his case to the very end." (ECF No. 103-1 at 3.) Counsel advised movant to accept the fast track offer, but movant rejected the proposed plea agreement claiming "that the anticipated sentence was too much time." (ECF No. 103-1 at 3.) Counsel advised movant of the consequences of any delay in accepting the proposed plea agreement. (ECF No. 103-1 at 3.) On November 8, 2010, counsel met with movant, again

advising him that the best course of action was to change his plea. (ECF No. 103-1 at 3.) By December 13, 2010, when counsel met with movant again, the government had revoked the fast track offer, just as counsel had "repeatedly advised would happen if [movant] delayed." (ECF No. 103-1 at 4.) Counsel states that on several occasions movant "expressed his intent to testify at his trial, and during that testimony, admit to the jury the charge against him." (ECF No. 103-1 at 4.) Counsel declares that on several occasions, he advised movant that:

- if movant went to trial, the sentence he received post-trial would be substantially higher than the fast track offer.
- if he proceeded to trial, it would be highly unlikely that he would be granted an offense level reduction for acceptance of responsibility.

(ECF No. 103-1 at 4.) Movant was "fully informed of the consequences of rejecting the proposed plea agreement," and "of choosing the course of action he ultimately did choose." (ECF No. 103-1 at 5.) However, against defense counsel's "adamant advice," movant "chose to go to trial." (ECF No. 103-1 at 4.)

The Fast Track Plea Offer

On February 18, 2010, the government offered movant's assistant federal defender a plea offer for 37 months, noting that such offers are generally open for 30 days. (ECF No. 101-2 at 10.) On August 3, 2010, the government offered movant's newly-appointed defense counsel the same plea offer, 37 months, and re-extended the offer for 30 days. (ECF No. 101-2 at 19.) On October 4, 2010, the government extended the plea offer to October 12, 2010. (ECF No. 101-2 at 8.) On December 6, 2010, the government inquired whether counsel would be setting dates as it appeared movant "decided not to accept the fast-track offer of 37 months." (ECF No. 101-2 at 12.) On December 14, 2010, the government advised defense counsel that trial preparation was starting. (ECF No. 101-2 at 21.) Also, the government cautioned defense counsel that "the last time a [8 U.S.C. §] 1326 case went to trial in Sacramento, the defendant got 120 months. If [movant] pleads, he'll get three points off for acceptance and face a range of 57 to 71 months. Without acceptance, the range is 77 to 86 months." (ECF No. 101-3 at 21.)

////

## IV. DISCUSSION

Here, movant does not claim that defense counsel failed to inform him about the plea offer. Turner, 281 F.3d at 880 ("The question whether counsel was deficient is more difficult where, as here, the client has been informed of the plea offer.") Rather, movant claims that he did not understand the consequences of failing to timely seek a reduction for acknowledging culpability or the consequences of rejecting the fast track plea offer, and argues that such ignorance is solely due to defense counsel's advice. Movant appears to argue that the only explanation for his failure to accept the 37 month plea offer was his ignorance which movant claims is solely the fault of his defense counsel's alleged failure to adequately advise movant. Movant alleges that he "understood that the government was offering [through counsel] a term as sentence, but never was explained by the Lawyer that was a development of any fast track program." (ECF No. 89 at 6.)

According to defense counsel, he conveyed the plea offer to movant on several occasions and advised movant to accept the plea offer, and advised movant of the consequences of any delay in accepting the proposed plea agreement. (ECF No. 103-1 at 3.) Indeed, the record reflects movant's reasons for rejecting the plea offer, as set forth in defense counsel's June 10, 2011 sentencing memorandum:

> at no time has [movant] disputed the fact that he was in the United States illegally. Rather, his refusal to accept a plea agreement and subsequent decision to go to trial was based on his moral opposition to the manner in which his offense level was calculated and, consequently, the excessive sentence he was being offered. As the court will note, the indictment alleges in aggravation [movant's] 1997 conviction for . . . possession of a controlled substance for sale. For that offense, [movant] served a sentence of three years state prison. From [movant's] perspective, he paid for his past mistakes. He did his time. It is this very sentiment that resulted in his decision to go to trial in this case, notwithstanding the fact that he did not dispute his guilt of the underlying charge.

(ECF No. 61 at 2.) Later, in discussing the sentencing factors, defense counsel stated:

> The initial Fast Track offer in this case recommended a sentencing range of 37 to 46 months. As previously noted, [movant] felt that even the 37 month recommendation by the government during the early stages of the proceedings was excessive in light of the fact that he did [not] commit any new substantive crime beyond his

mere presence in the United States.

(ECF No. 61 at 7.)[2] Defense counsel's sentencing memorandum reveals details that counsel obtained through discussions with movant, and confirms that counsel discussed the offer with movant, and that it was movant's unhappiness with the 37 month prison term that motivated his failure to accept the plea offer rather than any lack of understanding or defense counsel's alleged failure to adequately advise movant.

Defense counsel argued strenuously in the sentencing memorandum that movant should be sentenced to the lower end of the guidelines, and should be granted the reduction in offense level for movant's acceptance of responsibility. The district court chose not to reduce the offense level based on not seeing "any act or profession of contrition" (ECF No. 83 at 7) by movant, but was persuaded to sentence movant to the lower end of the guideline range, 77 months, rather than the 96 months the government sought. Thus, despite movant's failure to accept the plea offer, counsel was not ineffective.

On this record, the undersigned concludes that defense counsel did not commit gross error or provide deficient assistance.

In addition, under the prejudice prong of Strickland, the court "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. 52, 59 (1985). If a habeas petitioner contends that counsel's deficient performance caused him to reject a plea offer, he must demonstrate a reasonable probability that he would have accepted the plea offer had he been properly advised. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003); Turner, 281 F.3d at 879. Several circuit courts have concluded that a habeas petitioner must show some objective evidence other than his unsupported assertions to establish that he suffered prejudice in this context. See Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991) (requiring further "objective evidence" that a petitioner would have accepted a plea offer); Diaz v. United States,

---

[2] Movant was contacted by immigration officials in Santa Clara County, where he was incarcerated on a failure to appear warrant for traffic violations. The initial contact with movant was for driving without a seatbelt. (ECF No. 61 at 5.)

930 F.2d 832, 835 (11th Cir. 1991) (movant's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer").

Here, movant has not offered evidence establishing that he would have taken the plea offer had defense counsel provided better advice.  Movant does not deny that his reason for failing to accept the government's offer was because he thought 37 months was too lengthy a prison term.  Indeed, movant reiterates his testimony that he told defense counsel that movant "wanted to explain things to [the judge]" and movant "thought the 37 months were a little bit too much for the case that [movant] had because [movant] wasn't arrested committing any crimes." (ECF No. 89 at 5-6.)  Movant also confirms that he explained to defense counsel that the "difference was not about . . . culpability" but "always was about the amount of the sentence." (ECF No. 89 at 5.)  These effective concessions impeach movant's claim that he did not understand the consequences of rejecting the plea offer or of failing to seek a reduction in offense level for acceptance of responsibility.  Instead, movant's failure to take the plea offer for months prior to its ultimate withdrawal is evidence that, even if movant was completely advised on the fast track program, he probably would not have elected to accept the plea offer, or earlier admitted his culpability.  The record demonstrates that it was the length of the 37 month prison term, not movant's inability to understand his situation, that led movant to not accept the government's fast track offer.

The court finds that movant failed to demonstrate that he probably would have accepted the 37 month fast track plea offer and not opted to go to trial.  Therefore, movant failed to show that he was prejudiced by his counsel's alleged failure to adequately advise him as to the consequences of rejecting the fast track plea offer or failing to timely seek a reduction in offense level for acceptance of responsibility.  Accordingly, movant's ineffective assistance of counsel claims should be rejected.

<u>Inability to Understand English</u>

In his reply, movant alleges, for the first time, that "there was a very real language barrier."  (ECF No. 108 at 1.)  Movant argues that there are different dialects of the Spanish

language, and challenges defense counsel's declaration that counsel is fluent in Spanish, claiming that "[t]his cannot be proven from the record." (ECF No. 108 at 1.)  Movant contends that the fact that defense counsel enlisted the assistance of an interpreter for their August 6, 2010 meeting contradicts defense counsel's claim that he is fluent in Spanish. (ECF No. 108 at 1-2.)  Movant also challenges the interpreter on the grounds that "there are different dialects of Spanish and because [movant's] English is not very good he . . . cannot confirm or deny whether the interpreter was accurate or not." (ECF No. 108 at 2.)  Movant relies on Chacon v. Wood, 36 F.3d 1459, 1464-65 (9th Cir. 1994), overruled on other grounds by statute, 28 U.S.C. § 2253(c).

Movant's attempt to raise a new claim in his reply is improper.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief.").  But even assuming, *arguendo*, movant properly and timely raised this claim, such claim is unavailing.  The absence of effective linguistic translation between attorney and client, where it is necessary, may amount to a violation of the right to effective assistance of counsel.  Chacon, 36 F.3d at 1465.  Here, however, movant alleges no facts demonstrating that counsel's advice in Spanish or the interpreter's translation of counsel's advice in Spanish was wholly inaccurate or misleading.  Unlike the defendant in Chacon, who pled specific instances of the interpreter's alleged misstatements,[3] movant raises conclusory

---

[3] Mr. Chacon specifically claimed that:

> during the guilty plea hearing whenever Mr. Chacon was addressed he would be saying to the Interpreter what are they saying she would simply say just say 'YES.' " With regard to the ineffective assistance claim, the petition made clear that it challenged not only Warren's actions but also "the validity of the actions or lack of action of [ JG ] acting as an Interpreter for the court." (emphasis in original). In support of his claims, Chacon alleged that JG had engaged in a pattern and practice of intentionally mistranslating court proceedings and inducing Spanish-speaking defendants to plead guilty involuntarily. According to the habeas petition, "Court Interpreter JG has [ ]now been Barred and dis[ ]missed from the Yakima County Superior Court as an interpreter for her negligence in a court of law when interpreting in legal issues and further for coerc[ing] Spanish origin clients into guilty pleas without informing them of the consequences and/or understanding of the nature of the charges against them."

arguments. For example, movant did not identify what dialect he might speak that allegedly differed from counsel or any interpreter. Indeed, movant claimed that he cannot articulate whether the interpreter was accurate or not. Importantly, movant was provided certified Spanish language interpreters at all pretrial proceedings, trial, change of plea proceedings, and sentencing, and movant had the additional benefit of counsel who was also fluent in Spanish. In addition to counsel explaining the plea offer in Spanish, movant had benefit of a certified interpreter explaining the plea offer in Spanish. While movant views counsel's effort in retaining an interpreter for the August 6, 2010 meeting as suspect, the court views counsel's actions as good lawyering. Even if movant did not understand defense counsel's Spanish, the certified interpreter interpreted the plea agreement and defense counsel's advice on August 6, 2010. Moreover, movant did not inform the court at any point in the proceedings that he did not understand either counsel or any of the interpreters, and first raised this alleged language barrier claim on October 15, 2013, long after defense counsel was appointed on July 20, 2010. Finally, movant's responses to the court's questions were not equivocal and did not indicate that movant did not understand the questions. Movant's belated language barrier claim is insufficient to demonstrate ineffectiveness of counsel, or an insufficiency in the interpreting services provided by defense counsel or the court. Thus, movant has not carried his burden to show a violation of the Strickland standard based on an alleged language barrier.

V.      REQUEST FOR EVIDENTIARY HEARING

An evidentiary hearing is not required pursuant to a Section 2255 petition if the allegations, "when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." United States. v. Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003); see also United States v. Mejia-Mesa, 153 F.3d 925, 929 (9th Cir. 1998) (noting that a "district court has discretion to deny an evidentiary hearing on a § 2255 claim where the files and records conclusively show that the movant is not entitled to relief"). In the instant action, the record demonstrates that movant is not entitled to relief; therefore, the

---

Chacon, 36 F.3d at 1462.

undersigned will not grant an evidentiary hearing.

VI.     CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Movant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 89) be denied; and

2. The Clerk of the Court be directed to close the companion civil case No. 2:13-cv-0023 JAM KJN P.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If movant files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time waives the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 11, 2014

/mira0007.257

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE